FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO** 2023 APR 13 PM 1: 14

JEFFREY P. COLWELL
CLERK

Civil Action No. _____ BY_____DEP. CLK
(To be supplied by the court)

Carmine Gulli , Plaintiff

v.

**Jury Trial requested:**
(please check one)
_X_ Yes ___ No

Douglas County Family Court ,

Judge Robert Lowenbach ,

Dr. Lon Kopit ,

Lindsi Johnson , Defendant(s).

Danielle Ozukowicz

(List each named defendant on a separate line. If you cannot fit the names of all defendants in
the space provided, please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names. The names of the defendants listed in the above
caption must be identical to those contained in Section B. Do not include addresses here.)

---

## COMPLAINT

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Carmine Gulli    2002 Quartz St Castle Rock, CO 80109
(Name and complete mailing address)

630-347-1479    carminegulli@gmail.com
(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:    Judge Robert Lowenbach    4000 Justice Way Castle Rock, CO 80108
(Name and complete mailing address)

720-437-6200
(Telephone number and e-mail address if known)

Defendant 2:    Lon Kopit 7940 S. University Blvd Centennial, CO 80122
(Name and complete mailing address)

303-770-1700    drlonkopit@aol.com
(Telephone number and e-mail address if known)

Defendant 3:    Lindsi Johnson    8638 Summit Peak Way Apt 308
(Name and complete mailing address)    Ooltewah, TN 37363

Unk.    lindsijohnson@gmail.com
(Telephone number and e-mail address if known)

Defendant 4:    Danielle Demkowicz    7555 E. Hampden Ave Ste 345 Denver, CO 80231
(Name and complete mailing address)

720-386-9176
(Telephone number and e-mail address if known)

2

## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

**X**    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

D.C. Colo. LCivR 40.1(a), Rule 16.2, Rule 26

Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of ___Colorado___.

If Defendant 1 is an individual, Defendant 1 is a citizen of ___Colorado___.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of ___Colorado___ (name of state or foreign nation).

Defendant 1 has its principal place of business in ___Colorado___ (name of state or foreign nation).

(*If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.*)

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:    Judge Lowenbach refused to address claims of abuse by Lindsi Johnson

Supporting facts:

Judge Lowenbach on 12/07/22 refused to consider a complaint against Lon Kopit for intefering in a police investigation ; DCFS investigation that Dr. Kopit himself opened. Standard 10 states The PRE shall report child abuse to the proper agency : the court. Dr. Kopit has failed to do this several times. Several emails were provided to the court ; Dr Kopit regarding physical abuse and drug use in front of the minor children by Lindsi Johnson. Furthermore audio evidence withheld by CRPD was provided to the court showing Dr, Kopit did in fact interfere with said DCFS investigation into abuse by Lindsi Johnson. Judge Lowenbach on 02/14/23 Ruled my request for a deposition of Lon Kopit, CRPD, and Douglas County's Sheriffs office were frivolous, groundless, and vexatious. My son explained in reports

# CLAIM 1 continued:

to Douglas County Sheriffs office that his Mother Lindsi Johnson abused his sister and instructed him to lie to the police. This report is on file with the court and has been ignored by Judge Lowenbach. Also Judge Lowenbach refuses to accept that the abuse my son references was brought up to Dr. Kopit in emails and in sessions with the childrens therapist Halugh Rice. Judge Lowenbach refuses to also note a letter from the childrens original reunification therapist stating the children do not wish to live in TN with their mother. Both children also made Statents in Dr. Kopits CFI report stating their desire to live with their father. On 03/31/23 Judge Lowenbach refused to recognize a forthwith motion to reconsider his ruling showing orders signed from this

CLAIM one cont:

Court on 01/18/23 assigning several issues to be handled in district court that names Judge Lowenbach to handle the afformentioned issues of (1) not handling proper finant disclosure,

(2) Ross johnson hiding finanil assets for Lindsi Johnson.
— Accounts not in her name

(3) Attorny Denkowicz filing trust documents under seal Attorny Denkowicz refusing to provide addresses to properly serve individuals hiding money for Lindsi Johnson

(4) Lon Kopit for hiding negative informatin about Lindsi Johnson from The court : hindering a police investigation he initiated.

· Judge Lowenbach incorrectly states in his ruling on 03/31/23 the district court order from Magistrate Hegarty has no relevance to our court case 2020DR30418.

<u>Claim 2</u>: Dr Lon Kopit interfered with a police investigation he initiated, and refused to follow his court appointed duties as a CFI

Dr Kopit never mentioned Lindsi Johnson showing up altered to 2 supervised visits to the court, nor mentioned it in either CFI Report. Dr Lon Kopit refused to mention instances of abuse to the court even though brought to his attention several times by Plaintiff. Dr Kopit & the plantiff are both mandated reporters. The plantiff has a very good understanding of that title. It appears Dr. Kopit does not. Dr. Kopit only reported abuse at the request of Plantiff after being informed of abuse for nearly a year. Dr. Kopit then interfered with a Castle Rock Police Investigation which was presented to both courts. As noted Dr. Kopit failed to report abuse in accordance with CJD 21-02 section 10. Dr Kopits

further acts to conceal abuse were contradicted by plantiffs minor son's statent to Douglas County Sheriff explaining said abuse.

<u>Claim 3</u>     Lindsi Johnson has hid several financil assets from the district court

Lindsi Johnson has received absolute frual support from her father Ross Johnson. She has funneled tens of thousends of dollars to her boyfriend Henrique Leavitt. The court has record of some of these issues. Lindsi has admitted to giving mony to her boyfriend from inheritances: monies from her father. Lindsi refused to provide bank statents from her father, boyfriend, and has testified that she has received annuities from her dead grandmother: great aunt. Lindsi refuses to provide bank statents from the trusts of Shirley Johnson, Marlin Johnson, Margaret

Stoneceipher, Bank accounts of Ross Johnson, or Henrique Leavitt. She flat out refuses to provide Henrique Leavitts address or Ross Johnsons address in violation of Rule 26, and Rule 16.2. Lindsi Johnson has also defrauded the state of colorado : the state of Tennessee by collecting medicaid : food stamps while failing to report said Assets. Particularly disquiting is that Lindsi pursued medicaid while the children lived here in colorado : plantiff paid for a private policy for heath insurace as it was

COURT ORDERED.

CLAIM 4 | Danielle Dembowicz flat out refused to follow rule 26 to subpoena Ross Johnson; "Ricky" Henriquel Leavitt. Attorny Dembowicz has refused to follow rule 16.2 several times. Attorny Dembowicz has lied to Plantiff regarding 3 bank accounts that Lindsi did in fact have open. Hers interference and refusal to follow very simple rules have been the reason for all federal; appelate cases in my divorce. Attorny Dembowicz has refused to properly fill out the courts sworn firanial statment from the begincy of this case. Attorny Dembowicz knew Lindsi was recieving welfare; refused to list it on my correspdence from the court. Furthermore Lindsi Johnson

testified at a contempt hearing the annuity received was from her great aunt Margaret Stoneceipher and not her Grandmother Shirley Johnson as initially reported to the court. As mentioned in Magistrate Hegartys order the mechanism of trust has been filed under seal in Douglas County Court. I have never seen said trust but I believe a proper outline of Shirley Johnsons mechanism of trust will clear up these inconsistencies; and provide a proper statut of assets to the court.

I would like Attorny Denkovicz to surrender 75,000 x 3 = $225,000 to me for interferring 3 times with rule 16-2. I would like the Colorado Bar Association to know of her actions: them to take appropriate steps to ensure this happens to no one else again in Colorado.

I would like our children to be returned to Colorado immediately. I have notified Douglas County Department of Human Services as well as Hamilton County, TN proper officers of welfare fraud. Dr. Lon Kopit should be investigated by the court as well as DORA. I request to have the Plantiff Lindsi Johnson to pay for any fees Dr. Kopits office may wish to charge for

his testimony. I reserve the right to delay any requests for relief from the state of colorado (specifically Douglas County Family Court) until I have all the facts of Assets from my ex wife Lindsi Johnson by way off All Accounts from Ross Johnson, Shirley Johnson trust, Marlin Johnson trust, Margaret Stoughton trust, and Henrigan Leavitt, and the Statments of CRPD, Douglas County Sheriff, and Len Kopit. There is currently an appeal on Judge Lowenbahs orders mentied in this complaint. Judicial review is not an appropriat use of Judge Lowenbahs failing to follow this courts orders:

### E.     REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

I would like a trial in Federal court where I can rely on facts: evidence. I would like Judge Lowenbach to recuse himself from my divorce proceedings as he has zero regard for the abuse of my children. I would like a prompt; proper disclosure of assets as is my right according to rule 16.2. I would like a proper Deposition of Lon Kopit, Castle Rock Police Department, and Douglas County Sheriff's office.

### F.     PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

04/13/23
_____
(Date)

(Revised February 2022)

5

| DISTRICT COURT, DOUGLAS COUNTY, COLORADO | |
|---|---|
| Court Address:<br>4000 JUSTICE WAY, CASTLE ROCK, CO, 80109-7546 | DATE FILED: December 7, 2022 12:27 PM<br>CASE NUMBER: 2020DR30618 |
| **Petitioner(s)** LINDSI GULLI<br>and<br>**Respondent(s)** CARMINE GULLI | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2020DR30618 |
| | Division: SR          Courtroom: |
| **Order:Request For Prima Facie Findings for a PRE Complaint** | |

The motion/proposed order attached hereto: DENIED.

This Court is not in a position to determine whether or not there is a prima facie case for a PRE Complaint because this judicial officer was just assigned to the case. Although the Respondent alleges that standards have been violated, a review of the PRE report and the record does not suggest that any violation of the standards set forth in CJD 21-02 have been violated. It is therefore Ordered that the Motion is denied.

Issue Date: 12/7/2022

*(signature)*

JOHN ROBERT LOWENBACH
Senior Judge

| District Court | FILED |
|---|---|
| Colorado County: _Douglas_ <br> Mailing Address: _4000 Justice Way, Castle Rock_ | IN THE COMBINED COURTS DOUGLAS COUNTY, CO <br> **NOV 21 2022** |
| **Parties:** <br> Petitioner: _Lindsi Johnson_ <br> & <br> Respondent: _Carmine Gulli_ <br> (or Co-petitioner) | *This box is for court use only.* |
| **Filed by:** <br> Name: _Carmine Gulli_ <br> Mailing Address: _2002 Quartz St Castle Rock_ <br> Phone _630 347 1479_     Fax: _____ <br> Email: _Carmine gulli @gmail.com_   Bar Number: _____ <br> (For lawyers) | Case Number: _2020 DR 30618_ <br> Division: _____ <br> Courtroom: _____ |

## Request for Prima Facie Findings for a PRE Complaint

I request first impression (*prima facie*) findings pursuant to CJD 21-02. I need those findings to submit a Parental Responsibilities Evaluator (PRE) complaint.

1.    The PRE has violated the following standards:

    ☐   Standard 1.    The PRE shall act professionally.

    ☒   Standard 2.    The PRE shall maintain objectivity.

    ☒   Standard 3.    The PRE serves as an investigative arm of the court.

    ☐   Standard 4.    The PRE shall not serve inconsistent dual roles.

    ☐   Standard 5.    The PRE may move to the role of parenting coordinator or decision-maker.

    ☒   Standard 6.    The PRE shall establish and maintain competence through training.

    ☒   Standard 7.    The PRE shall acknowledge when an issue is beyond their competence.

    ☒   Standard 8.    The PRE shall collect data and investigate sufficiently to allow the PRE to provide competent recommendations.

    ☐   Standard 9.    The PRE shall prepare a clear and timely report.

    ☒   Standard 10.   The PRE shall report child abuse to the proper agency and the court.

    ☐   Standard 11.   The PRE shall develop written policies for the parties.

    ☐   Standard 12.   The PRE shall develop written policies for counsel.

☐ Standard 13.   The PRE shall review the court's order of appointment.

☐ Standard 14.   The PRE shall have no private (*ex parte*) communications with the court.

2.   For each standard you checked above, explain how that standard was violated:

Standard ___2___ was violated because:

Dr Lon Kopit would testify at temporary orders, & again at 12/20/21 hearing and then call my cell phone to gauge my reaction to his testimony. There is no reason for him to call once his CFI responsibilities are done.

Standard ___3___ was violated because:

Abuse history and drug use were brought up to Dr Kopit several times. He did nothing to protect my children from said abuse physical & sexual. He also did nothing to prevent mother from having alcohol & drugs around children.

Standard ___6___ was violated because:

Several instances of witnessed physical abuse were brought up to Dr. Kopit. None of these instances made it to his CFI report.

*Attach more pages as needed.*

☐ Standard 13.  The PRE shall review the court's order of appointment.

☐ Standard 14.  The PRE shall have no private (*ex parte*) communications with the court.

2.  For each standard you checked above, explain how that standard was violated:

Standard __7__ was violated because:

Mother (petition) showed up to supervised visits altered. physical abuse was also brought up to Dr. Kopit as well as sexual abuse. Dr. Kopit failed to order any sort of drug testing or investigations into this behavior.

Standard __8__ was violated because:

Evidence by way of reports from Respondent as well as verbal interviews from Theresa Sauzi + Ivan Grilli were ignored. Both of these individuals acted as supervisors for the court. Reports were notarized + sent to the court.

Standard __10__ was violated because:

Dr. Kopit ignored reports of physical abuse + completely left them out of his reports to the court. furthermore upon request on a supplemental CFI investigation Dr. Lon Kopit opened a report to CPS then lied to Castle Rock Police regarding the situation stating he made the CPS report to satisfy me. He flat out ignored evidence of sexual + physical abuse of my children.

*Attach more pages as needed.*

Attachment to order 2020DR000618

**3.    Certificate of Service**

I certify that on *(enter date)* ___11/21/22___ , I gave a copy of this document to the other parties by: *(select at least one)*

☐ Colorado Courts E-Filing.    www.jbits.courts.state.co.us/efiling

☒ Email or Fax to: _Danielle @ds-attorneys.com_ .

☐ Regular Mail, addressed to: *(name, full address)*    ☐ Hand Delivery, to: *(name, place)*

1) _orlonkopit@aol.com_ .
2) _____ .
3) _____ .

**4.    Verified Signature**

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on the _21st_ day of _November_ , _2022_ , at
   *(date)*          *(month)*              *(year)*

_Castle Rock_ _____ _Co_ .
*(city or other location,*              *and state or country)*

Print Your Name: _Carmine Guelli_

Your Signature: _____

Lawyer Signature: _____
                 *(If any)*

Attachment to Order 2020DR30618

| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br>Court Address:<br>4000 JUSTICE WAY, CASTLE ROCK, CO, 80109-7546<br><br>**Petitioner(s)** LINDSI GULLI<br>and<br>**Respondent(s)** CARMINE GULLI | DATE FILED: February 14, 2023 2:20 PM<br>CASE NUMBER: 2020DR30618 |
|---|---|
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2020DR30618 |
| | Division: SR          Courtroom: |
| **Order:Response to Motion to/for Evidence for Deposition of Lon Kopit & Police** ||

The motion/proposed order attached hereto: ACTION TAKEN.

Respondent's filings are frivolous, groundless, and vexatious. The Respondent knew or reasonable should have known that his actions were substantially frivolous, groundless or substantially vexatious. This filing has sought to unnecessarily expand the litigation. The Court orders reasonable attorney's fees to be awarded to the Petitioner and against the Respondent pursuant to C.R.S. § 13-17-102. The Respondent has a right to demand a hearing on the reasonableness of the requested fees in the amount of $148.50. Absent such a request to be filed no later than February 27, 2023, fees will be awarded in the amount requested.

Issue Date: 2/14/2023

JOHN ROBERT LOWENBACH
Senior Judge

| | |
|---|---|
| **DISTRICT COURT, DOUGLAS COUNTY, COLORADO**<br>4000 Justice Way<br>Castle Rock, Colorado 80109<br>(720) 437-6200 | |
| In re the Marriage of:<br><br>PETITIONER:    **LINDSI GULLI, N/K/A LINDSI JOHNSON**<br><br>and<br><br>RESPONDENT:    **CARMINE GULLI** | |
| **Attorneys for Petitioner:**<br>Danielle L. Demkowicz<br>THE DEMKOWICZ LAW FIRM, LLC<br>Tamarac Plaza<br>7555 East Hampden Avenue, Suite 345<br>Denver, Colorado 80231<br>Telephone: 303-481-8259<br>Email: Danielle@DS-Attorneys.com<br>Attorney Registration Number: 32384 | ▲ COURT USE ONLY ▲<br><br>Case No: 20 DR 30618<br>Division: 2 |
| **RESPONSE TO MOTION TO/FOR EVIDENCE FOR DEPOSITION OF LON KOPIT & POLICE** | |

Petitioner, Lindsi Gulli, n/k/a Lindsi Johnson ("Mother"), through her counsel, Danielle L. Demkowicz of The Demkowicz Law Firm, LLC, respectfully submits this Response to Motion to/for Evidence for Deposition of Lon Kopit & Police. In support, Mother states the following:

1.    Respondent filed a Motion to/for Evidence for Deposition of Lon Kopit & Police on January 11, 2023.

2.    Mother respectfully requests that Respondent's Motion be denied:

    (a)    for failure to confer pursuant to C.R.C.P. 121 § 1-15(8);

    (b)    for failure to cite to legal authority pursuant to C.R.C.P. 121 § 1-15(3);

    (c)    for failure to set forth a claim for relief pursuant to C.R.C.P. 12(b)(5), i.e., there is no legal or factual basis for a deposition to occur in this <u>domestic matter</u> based upon allegations that Dr. Kopit and the police ignored information received during their investigations. Any claim is against this individual/department and not against Mother; and

(d)     on the basis of res judicata as the Court already denied Respondent's request to depose any Town of Castle Rock police officers, *see Gavrilis v. Gavrilis*, 116 P.3d 1272, 1273-1274 (Colo. App. 2005).

3.     Respondent's filings are frivolous, groundless, and vexatious, and they are otherwise interposed to harass Mother (who the Court has already found is the victim of domestic violence perpetuated by Respondent) and to unnecessarily expand the litigation.

4.     Mother respectfully requests an award of her reasonable attorney's fees and costs in having to prepare this Response pursuant to C.R.S. § 13-17-102, in the amount of $148.50.

5.     In support of the amount requested, undersigned counsel states that: (a) she has been in practice for 23 years (exclusively in family law for approximately 16 years); (b) undersigned counsel reasonably charges $300 per hour and her paralegal charges $175 per hour on this matter; (c) it took .3/hours of undersigned counsel's time and .3 of her paralegal's time to prepare and to e-file this Response; and (d) Mother will incur a filing and service fee of $24 (over the four pleadings this equates to $6.00 per pleading).

Wherefore, based upon the foregoing, Ms. Johnson respectfully requests the Court deny Respondent's Forthwith Motion for Consideration of Evidence for Deposition and award her reasonable attorney's fees and costs in the amount of $148.50.

Wherefore, based upon the foregoing, Ms. Johnson respectfully requests the Court deny Respondent's Motion to/for Evidence for Deposition of Lon Kopit & Police and award her reasonable attorney's fees and costs in the amount of $148.50.

Respectfully submitted February 1, 2023.

THE DEMKOWICZ LAW FIRM, LLC

S/ Danielle L. Demkowicz

_____
Danielle L. Demkowicz, #32384
*Attorneys for Petitioner*

2

## CERTIFICATE OF SERVICE

I certify that on February 1, 2023, I served a true and correct copy of the foregoing via Colorado Courts E-File System upon the following:

Mr. Carmine Gulli
2002 Quartz Street
Castle Rock, Colorado 80109

S/ Jasmine Lobato

_____

Jasmine Lobato, *Paralegal*

Attachment to Order – 2020DR30618

§ 14-10-124. Best interests of the child.

**Colorado Statutes**

**Title 14. DOMESTIC MATTERS**

**DISSOLUTION OF MARRIAGE - PARENTAL RESPONSIBILITIES**

**Article 10. Uniform Dissolution of Marriage Act**

*Current through 2021 Legislative Session*

**§ 14-10-124. Best interests of the child**

(1)  **Legislative declaration.** While co-parenting is not appropriate in all circumstances following dissolution of marriage or legal separation, the general assembly finds and declares that, in most circumstances, it is in the best interest of all parties to encourage frequent and continuing contact between each parent and the minor children of the marriage after the parents have separated or dissolved their marriage. In order to effectuate this goal when appropriate, the general assembly urges parents to share the rights and responsibilities of child-rearing and to encourage the love, affection, and contact between the children and the parents.

(1.3)  **Definitions.** For purposes of this section and section 14-10-129(2)(c), unless the context otherwise requires:

   (a)  "Domestic violence" means an act of violence or a threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship, and may include any act or threatened act against a person or against property, including an animal, when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship.

   (b)  "Intimate relationship" means a relationship between spouses, former spouses, past or present unmarried couples, or persons who are both parents of the same child regardless of whether the persons have been married or have lived together at any time.

   (c)  "Sexual assault" has the same meaning as set forth in section 19-1-103 (96.5), C.R.S.

(1.5)  **Allocation of parental responsibilities.** The court shall determine the allocation of parental responsibilities, including parenting time and decision-making responsibilities, in accordance with the best interests of the child giving paramount consideration to the child's safety and the physical, mental, and emotional conditions and needs of the child as

follows:

(a)    **Determination of parenting time.** The court, upon the motion of either party or upon its own motion, may make provisions for parenting time that the court finds are in the child's best interests unless the court finds, after a hearing, that parenting time by the party would endanger the child's physical health or significantly impair the child's emotional development. In addition to a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development, in any order imposing or continuing a parenting time restriction, the court shall enumerate the specific factual findings supporting the restriction and may enumerate the conditions that the restricted party could fulfill in order to seek modification in the parenting plan. When a claim of child abuse or neglect, domestic violence, or sexual assault where there is also a claim that the child was conceived as a result of the sexual assault has been made to the court, or the court has reason to believe that a party has committed child abuse or neglect, domestic violence, or sexual assault where there is also a claim that the child was conceived as a result of the sexual assault, prior to determining parenting time, the court shall follow the provisions of subsection (4) of this section. In determining the best interests of the child for purposes of parenting time, the court shall consider all relevant factors, including:

(I)    The wishes of the child's parents as to parenting time;

(II)    The wishes of the child if he or she is sufficiently mature to express reasoned and independent preferences as to the parenting time schedule;

(III)    The interaction and interrelationship of the child with his or her parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(III.5)    Any report related to domestic violence that is submitted to the court by a child and family investigator, if one is appointed pursuant to section 14-10-116.5; a professional parental responsibilities evaluator, if one is appointed pursuant to section 14-10-127; or a legal representative of the child, if one is appointed pursuant to section 14-10-116. The court may consider other testimony regarding domestic violence from the parties, experts, therapists for any parent or child, the department of human services, parenting time supervisors, school personnel, or other lay witnesses.

(IV)    The child's adjustment to his or her home, school, and community;

(V)    The mental and physical health of all individuals involved, except that a disability alone shall not be a basis to deny or restrict parenting time;

(VI)    The ability of the parties to encourage the sharing of love, affection, and

contact between the child and the other party; except that, if the court determines that a party is acting to protect the child from witnessing domestic violence or from being a victim of child abuse or neglect or domestic violence, the party's protective actions shall not be considered with respect to this factor;

(VII)   Whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support;

(VIII)   The physical proximity of the parties to each other as this relates to the practical considerations of parenting time;

(IX) and (X)   Repealed.

(XI)   The ability of each party to place the needs of the child ahead of his or her own needs.

(b)   **Allocation of decision-making responsibility.** The court, upon the motion of either party or its own motion, shall allocate the decision-making responsibilities between the parties based upon the best interests of the child. In determining decision-making responsibility, the court may allocate the decision-making responsibility with respect to each issue affecting the child mutually between both parties or individually to one or the other party or any combination thereof. When a claim of child abuse or neglect or domestic violence has been made to the court, or the court has reason to believe that a party has committed child abuse or neglect, domestic violence, or sexual assault where there is also a claim that the child in question was conceived as a result of the sexual assault, prior to allocating decision-making responsibility, the court shall follow the provisions of subsection (4) of this section. In determining the best interests of the child for purposes of allocating decision-making responsibilities, the court shall consider, in addition to the factors set forth in paragraph (a) of this subsection (1.5), all relevant factors including:

(I)   Credible evidence of the ability of the parties to cooperate and to make decisions jointly;

(II)   Whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support that would indicate an ability as mutual decision makers to provide a positive and nourishing relationship with the child;

(III)   Whether an allocation of mutual decision-making responsibility on any one

or a number of issues will promote more frequent or continuing contact between the child and each of the parties.

(IV)  Repealed.

and

(V)

(1.7)  Pursuant to section 14-10-123.4, children have the right to have the determination of matters relating to parental responsibilities based upon the best interests of the child. In contested hearings on final orders regarding the allocation of parental responsibilities, the court shall make findings on the record concerning the factors the court considered and the reasons why the allocation of parental responsibilities is in the best interests of the child.

(2)  The court shall not consider conduct of a party that does not affect that party's relationship to the child.

(3)  In determining parenting time or decision-making responsibilities, the court shall not presume that any person is better able to serve the best interests of the child because of that person's sex.

(3.5)  A request by either party for genetic testing shall not prejudice the requesting party in the allocation of parental responsibilities pursuant to subsection (1.5) of this section.

(4)  (a)  When a claim of child abuse or neglect, domestic violence, or sexual assault where there is also a claim that the child was conceived as a result of the sexual assault has been made to the court, or the court has reason to believe that a party has committed child abuse or neglect, domestic violence, or sexual assault that resulted in the conception of the child, prior to allocating parental responsibilities, including parenting time and decision-making responsibility, and prior to considering the factors set forth in paragraphs (a) and (b) of subsection (1.5) of this section, the court shall consider the following factors:

(I)  Whether one of the parties has committed an act of child abuse or neglect as defined in section 18-6-401, C.R.S., or as defined under the law of any state, which factor must be supported by a preponderance of the evidence. If the court finds that one of the parties has committed child abuse or neglect, then it shall not be in the best interests of the child to allocate mutual decision-making with respect to any issue over the objection of the other party or the legal representative of the child.

(II)  Whether one of the parties has committed an act of domestic violence, has engaged in a pattern of domestic violence, or has a history of domestic violence, which factor must be supported by a preponderance of the

evidence. If the court finds by a preponderance of the evidence that one of the parties has committed domestic violence:

(A) It shall not be in the best interests of the child to allocate mutual decision-making responsibility over the objection of the other party or the legal representative of the child, unless the court finds that there is credible evidence of the ability of the parties to make decisions cooperatively in the best interest of the child in a manner that is safe for the abused party and the child; and

(B) The court shall not appoint a parenting coordinator solely to ensure that mutual decision-making can be accomplished.

(III) Whether one of the parties has committed an act of sexual assault resulting in the conception of the child, which factor must be supported by a preponderance of the evidence. If the court finds by a preponderance of the evidence that one of the parties has committed sexual assault and the child was conceived as a result of the sexual assault, there is a rebuttable presumption that it is not in the best interests of the child to allocate sole or split decision-making authority to the party found to have committed sexual assault or to allocate mutual decision-making between a party found to have committed sexual assault and the party who was sexually assaulted with respect to any issue.

(IV) If one of the parties is found by a preponderance of the evidence to have committed sexual assault resulting in the conception of the child, whether it is in the best interests of the child to prohibit or limit the parenting time of that party with the child.

(b) The court shall consider the additional factors set forth in paragraphs (a) and (b) of subsection (1.5) of this section in light of any finding of child abuse or neglect, domestic violence, or sexual assault resulting in the conception of a child pursuant to this subsection (4).

(c) If a party is absent or leaves home because of an act or threatened act of domestic violence committed by the other party, such absence or leaving shall not be a factor in determining the best interests of the child.

(d) When the court finds by a preponderance of the evidence that one of the parties has committed child abuse or neglect, domestic violence, or sexual assault resulting in the conception of the child, the court shall consider, as the primary concern, the safety and well-being of the child and the abused party.

(e) When the court finds by a preponderance of the evidence that one of the parties

has committed child abuse or neglect, domestic violence, or sexual assault
resulting in the conception of the child, in formulating or approving a parenting
plan, the court shall consider conditions on parenting time that ensure the safety of
the child and of the abused party. In addition to any provisions set forth in
subsection (7) of this section that are appropriate, the parenting plan in these
cases may include, but is not limited to, the following provisions:

(I)    An order limiting contact between the parties to contact that the court
       deems is safe and that minimizes unnecessary communication between the
       parties;

(II)   An order that requires the exchange of the child for parenting time to occur
       in a protected setting determined by the court;

(III)  An order for supervised parenting time;

(IV)   An order restricting overnight parenting time;

(V)    An order that restricts the party who has committed domestic violence,
       sexual assault resulting in the conception of the child, or child abuse or
       neglect from possessing or consuming alcohol or controlled substances
       during parenting time or for twenty-four hours prior to the commencement of
       parenting time;

(VI)   An order directing that the address of the child or of any party remain
       confidential;

(VII)  An order that imposes any other condition on one or more parties that the
       court determines is necessary to protect the child, another party, or any
       other family or household member of a party; and

(VIII) An order that requires child support payments to be made through the child
       support registry to avoid the need for any related contact between the
       parties and an order that the payments be treated as a nondisclosure of
       information case.

(f)    When the court finds by a preponderance of the evidence that one of the parties
       has committed domestic violence, the court may order the party to submit to a
       domestic violence evaluation. If the court determines, based upon the results of the
       evaluation, that treatment is appropriate, the court may order the party to
       participate in domestic violence treatment. At any time, the court may require a
       subsequent evaluation to determine whether additional treatment is necessary. If
       the court awards parenting time to a party who has been ordered to participate in
       domestic violence treatment, the court may order the party to obtain a report from
       the treatment provider concerning the party's progress in treatment and addressing

any ongoing safety concerns regarding the party's parenting time. The court may order the party who has committed domestic violence to pay the costs of the domestic violence evaluations and treatment.

(5)     Repealed.

(6)     In the event of a medical emergency, either party shall be allowed to obtain necessary medical treatment for the minor child or children without being in violation of the order allocating decision-making responsibility or in contempt of court.

(7)     In order to implement an order allocating parental responsibilities, both parties may submit a parenting plan or plans for the court's approval that shall address both parenting time and the allocation of decision-making responsibilities. If no parenting plan is submitted or if the court does not approve a submitted parenting plan, the court, on its own motion, shall formulate a parenting plan that shall address parenting time and the allocation of decision-making responsibilities. When issues relating to parenting time are contested, and in other cases where appropriate, the parenting plan must be as specific as possible to clearly address the needs of the family as well as the current and future needs of the aging child. In general, the parenting plan may include, but is not limited to, the following provisions:

(a)     A designation of the type of decision-making awarded;

(b)     A practical schedule of parenting time for the child, including holidays and school vacations;

(c)     A procedure for the exchanges of the child for parenting time, including the location of the exchanges and the party or parties responsible for the child's transportation;

(d)     A procedure for communicating with each other about the child, including methods for communicating and frequency of communication;

(e)     A procedure for communication between a parent and the child outside of that parent's parenting time, including methods for communicating and frequency of communication; and

(f)     Any other orders in the best interests of the child.

(8)     The court may order mediation, pursuant to section 13-22-311, C.R.S., to assist the parties in formulating or modifying a parenting plan or in implementing a parenting plan specified in subsection (7) of this section and may allocate the cost of said mediation between the parties.

**Cite as (Casemaker) C.R.S. § 14-10-124**

**History.** Amended by 2021 Ch. 292, §5, eff. 6/22/2021.

Amended by 2014 Ch. 167, §7, eff. 7/1/2014.

Amended by 2013 Ch. 124, §1, eff. 8/7/2013.

Amended by 2013 Ch. 218, §2, eff. 7/1/2013.

L. 71: R&RE, p. 529, § 1. C.R.S. 1963: § 46-1-24. L. 79: (3) added, p. 645, § 1, effective March 2. L. 81: (4) added, p. 904, § 1, effective May 22. L. 83: (1) R&RE and (1.5) and (5) added, p. 647, §§ 3, 4, effective June 10. L. 87: (1.5)(g) to (1.5)(m) added and (5) repealed, pp. 574, 576, §§ 3, 6, effective July 1; (1.5)(m) repealed, p. 1578, § 22, effective July 1. L. 98: Entire section amended, p. 1380, § 10, effective February 1, 1999. L. 2005: (1.5)(b)(IV) and (1.5)(b)(V) amended, p. 961, § 6, effective July 1; (3.5) added, p. 377, § 2, effective January 1, 2006. L. 2010: (1.3) added and (1.5)(a)(X), (1.5)(b)(V), and (4) amended, (HB 10-1135), ch. 87, p. 290, §1, effective July 1. L. 2013: (1), IP(1.5), IP(1.5)(a), (1.5)(a)(VI), IP(1.5)(b), (4), and (7) amended, (1.5)(a)(IX), (1.5)(a)(X), (1.5)(b)(IV), and (1.5)(b)(V) repealed, and (1.7) added, (HB 13-1259), ch. 218, p. 995, § 2, effective July 1; IP(1.5)(a) amended, (HB 13-1243), ch. 124, p. 418, § 1, effective August 7. L. 2014: (1.3)(c), (4)(a)(III), and (4)(a)(IV) added and IP(1.5)(a), IP(1.5)(b), IP(4)(a), (4)(b), (4)(d), and (4)(e) amended, (HB 14-1162), ch. 167, p. 591, § 7, effective July 1.

**Editor's Note:**

*(1) Amendments to the introductory portion to subsection (1.5)(a) by House Bill 13-1259 and House Bill 13-1243 were harmonized.*

*(2) Subsections (4)(a)(I) and (4)(a)(II) are similar to former § 14-10-124 (1.5)(b)(IV) and (1.5)(b)(V) as they existed prior to August 7, 2013.*

**Case Notes:**

**ANNOTATION**

**I. GENERAL CONSIDERATION.**

**Law reviews.** For note, "Legislation: Domestic Relations -- New Colorado Statutes Govern Procedure in Contested Child Custody Cases", see 40 U. Colo. L. Rev. 485 (1968). For article, "Legislative Update", see 12 Colo. Law. 1257 (1983). For article, "Moving the Children Out of State", see 12 Colo. Law. 1450 (1983). For article, "Helping Joint Custody Work", see 14 Colo. Law. 1984 (1985). For article, "Dealing with Sexual Abuse Allegations in Custody and Visitation Disputes -- Parts I and II", see 16 Colo. Law. 1005 and 1225 (1987). For article, "Children of Divorce", see 16 Colo. Law. 1853 (1987). For article, "The Role of the Guardian ad Litem in Custody and Visitation Disputes", see 17 Colo. Law. 1301 (1988). For article, "Custody Evaluations in Colorado", see 18 Colo. Law. 1523 (1989). For article, "Drafting the Joint Parenting Plan", see 18 Colo. Law. 2117 (1989). For article, "Custody Cases and the Theory of Parental Alienation Syndrome", see 20 Colo. Law. 53 (1991). For article, "Relocation: An Issue In Need of Clarification in Colorado", see 20 Colo. Law. 2517 (1991). For article, "Elimination of 'Custody' in Colorado: The Impact of H.B.1183", see 27 Colo. Law. 83 (Sept. 1998). For article, "How to Explain the New Parental Responsibility Law to Clients", see 27 Colo. Law. 85 (Oct. 1998). For article, "Addressing New Standards for Modification Under the Parental Responsibility Act", see 28 Colo. Law. 67 (June 1999). For article, "Representing Children When There Are Allegations of Domestic Violence", see 28 Colo. Law. 77 (Nov. 1999). For article, "Parenting Time in Divorce", see 31

Colo. Law. 25 (Oct. 2002). For article, "The Child's Wishes in APR Proceedings: An Evidentiary Conundrum", see 36 Colo. Law. 33 (Jan. 2007). For article, "Domestic Violence Intervention: 2010 Update", see 39 Colo. Law. 83 (Sept. 2010). For article, "Emerging Spousal Support and Parenting Issues", see 41 Colo. Law. 45 (Oct. 2012).

**Annotator's note.** Since § 14-10-124 is similar to repealed § 46-1-5(1)(b), C.R.S. 1963, § 46-1-5, CRS 53, and CSA, C. 56, § 8, relevant cases construing those provisions have been included in the annotations to this section.

**Trial court should have applied the standard for an original determination of visitation, which is based on the best interests of the child,** where the order awarding parenting time to stepfather was a temporary order. Although paternity decree operated as a final order and permanent allocation as to paternity and custody, its award of parenting time to stepfather was a temporary order because the parties had not reached an agreement on a permanent parenting time schedule but had agreed to maintain the interim schedule and work toward a permanent one. The fact that the parties adhered to the schedule for nearly three years did not change the nature of the order. In re C.T.G., 179 P.3d 213 (Colo. App. 2007).

**Trial court erred by failing to afford parents their due process rights because court did not presume parents were acting in the child's best interests,** but instead placed upon them the burden of demonstrating that visitation with stepfather would endanger the child; the court did not find that "special circumstances" existed which justified the intrusion on the parents' rights; and the court did not apply a clear and convincing evidence standard. In re C.T.G., 179 P.3d 213 (Colo. App. 2007).

**Even if stepfather was a psychological parent, stepfather failed to present evidence to rebut presumption that parents were acting in their child's best interests** by terminating stepfather's visitation and failed to show or proffer evidence of special circumstances that would justify trial court's order allowing visitation against the wishes of the parents. The visitation order infringed upon parents' fundamental right to direct the upbringing of their child. In re C.T.G., 179 P.3d 213 (Colo. App. 2007).

**A court meets the due process requirement in Troxel v. Granville, 530 U.S. 57 (2000), to accord "special weight" to a parent's determination of the best interests of a child** by considering all relevant factors set forth in this section and entering findings based on clear and convincing proof that the best interests of the child justify the award of parental responsibilities to the nonparent. In re Reese, 227 P.3d 900 (Colo. App. 2010).

**The intrinsic threat of emotional harm to child from curtailment or termination of relationship with psychological parent** is not, in itself, sufficient to satisfy the requirement that the court give special weight to the presumption that a parent's determination is in the best interests of the child. This section identifies non-exclusive statutory factors courts should consider in determining the best interests of the child. In re Reese, 227 P.3d 900 (Colo. App. 2010).

**Applied** in Woodhouse v. District Court, 19 6 Colo. 558, 587 P.2d 1199 (1978); In re Pilcher, 628 P.2d 126 (Colo. App. 1980); In re Rinow, 624 P.2d 365 (Colo. App. 1981); Dawson v. Pub. Employees' Retirement Ass'n, 664 P.2d 702 (Colo. 1983).

## II. DETERMINATION OF BEST INTERESTS.

### A. In General.

**Applications for parental responsibilities by a nonparent implicate the fundamental constitutional right to family autonomy and privacy,** and a legislative enactment that infringes on a fundamental right is constitutionally permissible only if it is necessary to promote a compelling state interest and does so in the least restrictive manner possible. In re E.L.M.C., 100 P.3d 546 (Colo. App. 2004).

**The constitutional presumption that a fit parent acts in the best interests of the child applies to all stages of an allocation of parental responsibilities proceeding.** The applicable standard for consideration of an order granting any parenting time to non-parents in the face of the parent's objection includes a presumption in favor of the parental determination; an opportunity to rebut this presumption with a showing by the non-parents through clear and convincing evidence that the parental determination is not in the child's best interests; and placement of the ultimate burden on the non-parents to establish by clear and convincing evidence that allocation of parenting time to them is in the best interests of the child. In re B.J., 242 P.3d 1128 (Colo. 2010).

**Determining whether to apply the best interest standard or the endangerment standard** may involve inquiry into both the quantitative and the qualitative aspects of the proposed change to parenting time, as well as the reason or reasons advanced for the change. In re West, 94 P.3d 1248 (Colo. App. 2004).

**The principal issue before the courts is the welfare of the child,** and to that welfare the rights and personal desires of the parents are subservient. Miller v. Miller, 129 Colo. 462, 271 P.2d 411 (1954); Hayes v. Hayes, 134 Colo. 315, 303 P.2d 238 (1956); Jensen v. Jensen, 142 Colo. 420, 351 P.2d 387 (1960); Grosso v. Grosso, 149 Colo. 183, 368 P.2d 561 (1962); Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962).

The prime criterion of a custody award in the court's determination is the welfare of the children. Rayer v. Rayer, 32 Colo. App. 400, 512 P.2d 637 (1973).

The primary focus of any custody determination, including one involving separation of children, must be the best interests of the children. In re Dickey, 658 P.2d 276 (Colo. App. 1982).

The best interests of the child must predominate in any custody determination. In re McGee, 44 Colo. App. 330, 613 P.2d 348 (1980).

It is the well-being of the child rather than the reward or punishment of a parent that ought to guide every aspect of a custody determination, including visitation. In re McGee, 44 Colo. App. 330, 613 P.2d 348 (1980).

Where trial court made no finding that father's conduct in his homosexual lifestyle endangered the child physically or impaired the child's emotional development, father could not be precluded from having overnight guests during his parenting time or taking child to gay environment of father's church. In re Dorworth, 33 P.3d 1260 (Colo. App. 2001).

**The best interests of a child as an individual, and not as a sibling,** are the controlling factors in divided custody

determinations. In re Barnthouse, 765 P.2d 610 (Colo. App. 1988), cert. denied, 490 U.S. 1021, 109 S. Ct. 1747, 104 L. Ed. 2d 184 (1989).

**In cases involving child custody the principal issue before the court is not the convenience of the parents.** Kelley v. Kelley, 161 Colo. 486, 423 P.2d 315 (1967).

**Section 14-10-123.4 coupled with the permissive language found throughout § 14-10-123.5 and this section** indicates that the best interests of the child, and not the rights or wishes of either parent, must dictate the outcome of any custody dispute. In re Lester, 791 P.2d 1244 (Colo. App. 1990).

**In determining a custodial dispute between a parent and a nonparent, Colorado courts recognize that the best interests standard is subject to a presumption that the biological parent has a first and prior right to custody.** Abrams v. Connolly, 781 P.2d 651 (Colo. 1989); In re Custody of C.C.R.S., 892 P.2d 246 (Colo. 1995); In re C.M., 74 P.3d 342 (Colo. App. 2002); People ex rel. A.M.K., 68 P.3d 563 (Colo. App. 2003).

Natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children. This fundamental liberty interest gives rise to a presumption that the best interests of the child will be furthered by a fit natural parent. People ex rel. A.M.K., 68 P.3d 563 (Colo. App. 2003).

**This presumption may be rebutted** by evidence establishing that the welfare of the child, i.e., the best interests of the child, is better served by granting custody to a nonparent. Abrams v. Connolly, 781 P.2d 651 (Colo. 1989); In re Custody of C.C.R.S., 892 P.2d 246 (Colo. 1995); In re C.M., 74 P.3d 342 (Colo. App. 2002); In re M.J.K., 200 P.3d 1106 (Colo. App. 2008).

**The right of a parent to have the custody of his child must give way where the welfare of the child requires it.** Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962).

**When it is conducive to the child's best interests, a trial court may refuse to award custody to either parent** and may award custody to someone other than a natural parent of the child and even to a nonresident of the state. Rippere v. Rippere, 157 Colo. 29, 400 P.2d 920 (1965).

**In determining the best interests of the child, the court must consider all relevant factors, including those enumerated in subsection (1.5).** In re Lester, 791 P.2d 1244 (Colo. App. 1990); In re Finer, 920 P.2d 325 (Colo. App. 1996); In re Fickling, 100 P.3d 571 (Colo. App. 2004).

**When the court is determining the best interests of the child, the analysis must consider the least detrimental alternative.** In re Martin, 42 P.3d 75 (Colo. App. 2002).

**The phrase "best interests of the child" has identical meaning** in this section and § 19-1-101 et seq. People in Interest of A.A.G., 902 P.2d 437 (Colo. App. 1995), aff'd in part and rev'd in part on other grounds, 912 P.2d 1385 (Colo. 1996).

**Factors enumerated in subsection (1.5) may be considered in dependency action** pursuant to the Colorado

Children's Code. People in Interest of A.A.G., 902 P.2d 437 (Colo. App. 1995), aff'd in part and rev'd in part on other grounds, 912 P.2d 1385 (Colo. 1996).

**The general assembly did not intend to bar or presumptively bar an abusive parent or spouse from exercising individual decision-making responsibility** with respect to children by enacting subsections (1.5)(b)(IV) and (1.5)(b)(V). The general assembly chose to either prohibit or presumptively prohibit only mutual decision-making responsibility. In re Bertsch, 97 P.3d 219 (Colo. App. 2004).

**The general assembly's failure to amend bill following testimony from proponent noting that there was nothing in the bill requiring or prohibiting court from giving sole decision-making on every issue to one party or the other** led court to conclude that the general assembly did not mean to preclude as a matter of law abusive parents or spouses from exercising individual, or even sole, decision-making responsibility. In re Bertsch, 97 P.3d 219 (Colo. App. 2004).

**The court is to consider whether a parent has been a perpetrator of child or spouse abuse as but two, albeit important, factors in assessing the best interests of the child** in determining whether to award parenting time or individual decision-making responsibility. In re Bertsch, 97 P.3d 219 (Colo. App. 2004); In re Yates, 148 P.3d 304 (Colo. App. 2006).

**This construction does not lead to an absurd result.** Because the court makes a finding that a person has abused a child or spouse in the past does not necessarily and inevitably mean either that history is doomed to repeat itself or that the individual is capable of becoming a fit, or even the more fit, parent of a child. In re Bertsch, 97 P.3d 219 (Colo. App. 2004).

**Allocation of parental responsibilities to wife was proper where wife, despite being previously convicted of child abuse,** had since received and benefitted from counseling, and there was no suggestion of prospective child abuse; however, there was a greater concern about husband's parenting skills. In re Yates, 148 P.3d 304 (Colo. App. 2006).

**Authority of court.** A court has authority under the uniform act to award custody of a natural child of one spouse to the other spouse who is neither a natural, nor adoptive, parent of that child. In re Tricamo, 42 Colo. App. 493, 599 P.2d 273 (1979).

A court has authority under the uniform act to order a change of name of a minor child. In re Nguyen, 684 P.2d 258 (Colo. App. 1983), cert. denied, 469 U.S. 1108, 105 S. Ct. 785, 83 L. Ed. 2d 779 (1985).

**Custody cases are not adversary proceedings,** but hearings to determine what placement of the child will be in the child's best interests. Rayer v. Rayer, 32 Colo. App. 400, 512 P.2d 637 (1973).

**The question as to whether a court may permit a child to be taken from the state first having jurisdiction to another jurisdiction** was, like all other questions affecting the welfare and best interests of the child, vested in the sound legal discretion of a trial court. Hayes v. Hayes, 134 Colo. 315, 303 P.2d 238 (1956).

**Policy of law in state is to permit removal of child from jurisdiction where** it will serve the well-being and future interests of the child. In re McGee, 44 Colo. App. 330, 613 P.2d 348 (1980).

**In an initial determination to allocate parental responsibilities, a court has no statutory authority to order a parent to live in a specific location.** The court, rather, must accept the location in which each party intends to live and allocate parental responsibilities accordingly in the best interests of the child. Spahmer v. Gullette, 113 P.3d 158 (Colo. 2005); In re Morgan, 2018 COA 116M, 428 P.3d 550.

Mother's admission that she would not move without her children did not make ambiguous her repeated statements, both oral and written, that she intended to move out of state. Court erred in fashioning an order for weekly shared parenting time with father that effectively coerced mother into abandoning her plans to relocate. In re Morgan, 2018 COA 116M, 428 P.3d 550.

**Where the custody of a child was awarded in a divorce proceeding, the child became a ward of the court,** and it was against the policy of the law to permit its removal to another jurisdiction unless its well-being and future welfare were served thereby. Holland v. Holland, 150 Colo. 442, 373 P.2d 523 (1962).

**A change of custody should not be awarded as punishment for a parent's disregard of the court's orders prohibiting removal of the child from the jurisdiction,** since the best interests of the child were paramount. Holland v. Holland, 150 Colo. 442, 373 P.2d 523 (1962).

**"Joint selection of schools" provision in separation agreement** is unenforceable because such a provision promotes discord between the parents and is not, therefore, "in the best interests of the child". Custodial parent retains the ultimate authority to select the child's school. Griffin v. Griffin, 699 P.2d 407 (Colo. 1985).

**Guardian ad litem represents wishes of child.** This section does not require representation of the child's wishes by an attorney chosen by the child rather than a court appointed guardian ad litem. In re Hartley, 886 P.2d 665 (Colo. 1994).

**Representation of child's wishes by attorney chosen by child unnecessary and duplicative.** The statutory safeguards inherent in the obligations of the guardian ad litem as well as the ability of the court to interview the child concerning the child's wishes provide sufficient opportunity for a child to be heard. In re Hartley, 886 P.2d 665 (Colo. 1994).

**Permanent orders restriction on religious upbringing of minor child in dissolution of marriage unconstitutional.** Permanent orders in a dissolution of marriage action that adopted the special advocate's recommendation to place a restriction on the mother's right to influence her child's upbringing, absent a finding of substantial harm to the child, violate the mother's constitutional right to free exercise of religion. In re McSoud, 131 P.3d 1208 (Colo. App. 2006).

**Absent a clear showing of substantial harm to the child, a parent who does not have decision-making authority with respect to religion nevertheless retains a constitutional right to educate the child in that**

**parent's religion.** However, harm to the child will be found if one parent disparages the other parent's religion, thus justifying a limitation on that parent's right to religious education of the child. In re McSoud, 131 P.3d 1208 (Colo. App. 2006).

**Harm to the child from conflicting religious instructions or practices** must be demonstrated in detail and be substantial to warrant limitations on either parent's instructions or practices. In the absence of a demonstrated harm to the child, the best interests of the child standard is insufficient to serve as a compelling state interest that overrules the parents' fundamental rights to freedom of religion. In re McSoud, 131 P.3d 1208 (Colo. App. 2006).

**B. Evidence.**

**The court did not err in determining under the rules of civil procedure and by a preponderance of the evidence that the criminal child abuse statute was violated.** The use of the preponderancy standard in domestic proceedings does not offend due process and is adequate to protect a parent from false accusations of child abuse while serving the strong societal interest in protecting children from abusive parents. In re McCaulley-Elfert, 70 P.3d 590 (Colo. App. 2003).

Although subsections (1.5)(a)(IX) and (1.5)(b)(IV) do not say a factor must be proven by a preponderance of the evidence, those subsections do state that it shall be "supported by credible evidence". "Supported by credible evidence" means no more than supported by a preponderance of the evidence. In re McCaulley-Elfert, 70 P.3d 590 (Colo. App. 2003).

**Because the presumption that a child's welfare is best served through custody of the natural parent is rebuttable,** and where the evidence establishes that the best interest of the child will not be promoted by such custody, it will not be granted. Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962).

**That the natural parents have a first and prior right to custody does not require that custody be awarded to the parent** or parents merely because the evidence shows fitness and ability to care for the child. Coulter v. Coulter, 141 Colo. 237, 347 P.2d 492 (1959); Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962).

**When considering non-parents' assertions of parental rights,** Colorado rejects a requirement that a parent be found unfit before interfering with the parent's parenting plan. In re E.L.M.C., 100 P.3d 546 (Colo. App. 2004).

**Proof that a fit parent's exercise of parental responsibilities poses actual or threatened emotional harm to the child** establishes a compelling state interest sufficient to permit state interference with parental rights. In re E.L.M.C., 100 P.3d 546 (Colo. App. 2004).

**The fitness of the mother was not in issue** when it was not established that the welfare of her children would be better served by changing the custody back to her. Munson v. Munson, 155 Colo. 427, 395 P.2d 103 (1964).

**Where wife living with man to whom she is not married.** It is an abuse of discretion for the trial court to impose its own standard in regard to the wife living with a man to whom she is not married in the face of the clear and mandatory

language of the statute, where there was no evidence to infer that such conduct was detrimental to the children's welfare. In re Moore, 35 Colo. App. 280, 531 P.2d 995 (1975).

**A natural father, shown to be a fit and proper person to have custody of his minor child, could have been denied custody** where findings of trial court, amply supported by evidence, determined that such custody would not be in the best interests of the child. Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962).

**Court presumed to disregard incompetent evidence.** The presumption is that in making its decision to award custody of a child, the trial court disregards any incompetent evidence, or additional information to which it might have had access. Rayer v. Rayer, 32 Colo. App. 400, 512 P.2d 637 (1973).

**Conduct of proposed custodian not affecting children is not to be considered.** The general assembly has directed that in determining child custody the court shall not consider conduct of a proposed custodian that does not affect the children. In re Moore, 35 Colo. App. 280, 531 P.2d 995 (1975).

**Inquiry into religious practices.** Evidence of a party's religious beliefs or practices is relevant and admissible in a custody proceeding if it is shown that such beliefs or practices are reasonably likely to present or future harm to the physical or mental development of the child. In re Short, 698 P.2d 1310 (Colo. 1985).

**Court order requiring children be returned to Colorado** one year following the dissolution of marriage decree cannot stand since court made no finding that such a move would be in the best interests of the children. In re Hoffman, 701 P.2d 129 (Colo. App. 1985).

**Record supported the trial court's determination that sole custody by mother was in children's best interests.** Among the factors favoring this determination were the mother's status as primary-caretaker and the parties' lack of communication and poor ability to agree with each other. In re Lester, 791 P.2d 1244 (Colo. App. 1990).

**It is not necessary that the trial court make specific findings on each and every factor included in subsection (1.5).** All that is required is an indication that the trial court considered those factors which were pertinent and that the findings are sufficient to enable this court to determine the grounds for the trial court's decision and whether the decision was supported by competent evidence. In re Lester, 791 P.2d 1244 (Colo. App. 1990); In re Finer, 920 P.2d 325 (Colo. App. 1996).

It is not necessary that a trial court make specific findings on each and every factor included in the statute, but there must be some indication in the record that the trial court considered those factors that were pertinent. In re Garst, 955 P.2d 1056 (Colo. App. 1998); In re Custody of C.J.S., 37 P.3d 479 (Colo. App. 2001).

**A party is entitled to an evidentiary hearing** before a court may prohibit parenting time. In re D.R.V-A, 976 P.2d 881 (Colo. App. 1999).

**Trial court did not err in entering findings with respect to husband's stepdaughter even though it did not have jurisdiction over her.** Although the trial court had no jurisdiction over the stepdaughter, jurisdiction over the

stepdaughter was not necessary for the trial court to consider evidence of the husband's sexual misconduct regarding the stepdaughter in determining the parental responsibility issues raised with respect to husband's son. Nothing precludes the court's inquiry into alleged child abuse or neglect when determining the best interests of the child, even if the alleged abuse or neglect involves other children. In re McCaulley-Elfert, 70 P.3d 590 (Colo. App. 2003).

**Trial court did not err in granting parental responsibilities to nonparent when trial court applied best interests standard and incorporated all relevant factors and further found clear and convincing evidence** that the parent filed for joint custody of the child with the nonparent, requested co-parenting responsibilities with the nonparent, entered into a plan for joint parenting with the nonparent, permitted the nonparent to jointly parent the child during the course of their relationship, and encouraged the nonparent's participation in raising the child and that the child equally recognizes both parties as her parents and is doing extremely well both academically and socially. In re E.L.M.C., 100 P.3d 546 (Colo. App. 2004).

**Trial court's order granting the child's psychological parent, a nonparent, equal parental responsibilities was proper** when curtailment and eventual termination of parental responsibilities threatened emotional harm to the child and constituted a compelling state interest justifying modification of parent's proposed parenting plan by the court. In re E.L.M.C., 100 P.3d 546 (Colo. App. 2004).

**Presumption favoring a parent's determination regarding the best interests of the child may be rebutted** by proof by clear and convincing evidence of either: (1) The parent's unfitness; or (2) the best interests of the child. In re Adoption of C.A., 137 P.3d 318 (Colo. 2006); In re Reese, 227 P.3d 900 (Colo. App. 2010).

**Nonparent need not show demonstrated harm to child to satisfy "special weight" accorded to parental determinations.** In re Adoption of C.A., 137 P.3d 318 (Colo. 2006); In re Reese, 227 P.3d 900 (Colo. App. 2010).

**Court may not allocate parental responsibilities to a nonparent unless it accords "special weight" to the parent's determination of the best interests of the child.** Application of the clear and convincing proof standard is necessary to accord special weight to a parent's determination of best interests. In re Reese, 227 P.3d 900 (Colo. App. 2010).

**A court meets the due process requirement in Troxel v. Granville, 530 U.S. 57 (2000), to accord "special weight" to a parent's determination of the best interests of a child** by considering all relevant factors set forth in this section and entering findings based on clear and convincing proof that the best interests of the child justify the award of parental responsibilities to the nonparent. In re Reese, 227 P.3d 900 (Colo. App. 2010).

**The intrinsic threat of emotional harm to child from curtailment or termination of relationship with psychological parent** is not, in itself, sufficient to satisfy the requirement that the court give special weight to the presumption that a parent's determination is in the best interests of the child. This section identifies non-exclusive statutory factors courts should consider in determining the best interests of the child. In re Reese, 227 P.3d 900 (Colo. App. 2010).

**C. Discretion of Court.**

**Questions of custody must of necessity rest upon the judgment of the trier of facts; hence are best left in the hands of the trial court,** and its determination should not be disturbed if there is sufficient competent evidence to support its conclusion. Miller v. Miller, 129 Colo. 462, 271 P.2d 411 (1954); Harris v. Harris, 140 Colo. 591, 345 P.2d 1061 (1959); Parker v. Parker, 142 Colo. 416, 350 P.2d 1067 (1960); Jensen v. Jensen, 142 Colo. 420, 351 P.2d 387 (1960); Flor v. Flor, 148 Colo. 514, 366 P.2d 664 (1961); Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962); Smith v. Smith, 172 Colo. 516, 474 P.2d 619 (1970); Meene v. Meene, 194 Colo. 304, 572 P.2d 472 (1977).

The trial court is best able to appraise the circumstances of the parties and best fitted to make the factual determinations regarding custody. Rayer v. Rayer, 32 Colo. App. 400, 512 P.2d 637 (1973).

The determination of custody is left to the discretion of the trial judge, and in the absence of an abuse of that discretion, an appellate court will not disturb these determinations. Rayer v. Rayer, 32 Colo. App. 400, 512 P.2d 637 (1973); In re Dickman, 670 P.2d 20 (Colo. App. 1983).

Custody awards in dissolution of marriage proceedings are a matter to be determined within the sound discretion of the trial court. In re Armbeck, 33 Colo. App. 260, 518 P.2d 300 (1974).

Question of custody is a matter within the discretion of the trial court after taking into consideration the various factors outlined in this section for the purpose of determining the best interest of the child. Rhoades v. Rhoades, 188 Colo. 423, 535 P.2d 1122 (1975).

**In a custody and support proceeding, where a defendant presented his entire case and made no request for a further hearing,** fact that trial court did not hold additional hearing after indicating it might do so, did not deprive defendant of his day in court. Grosso v. Grosso, 149 Colo. 183, 368 P.2d 561 (1962).

**Prior to the enactment of subsection (1.5) in its present form, an imposition of joint custody over the objection of either parent constituted an abuse of discretion.** However, that subsection now permits the trial court to order joint or sole custody after determining which form of custody is in the best interest of the child. In re Lester, 791 P.2d 1244 (Colo. App. 1990).

**The general assembly did not intend to state a preference or a mandate for joint custody under subsection (1.5).** In re Lester, 791 P.2d 1244 (Colo. App. 1990).

**Where one expert testified that he felt the mother to be the best guardian for the child at his current age of one year,** but felt that the mother's psychiatric problems would begin to tell on the child as he reached four or five, the trial court did not err in ruling that it must look at the whole picture, and decided that it would be best to merely allow the mother liberal visitation rights for the first few years. Smith v. Smith, 172 Colo. 516, 474 P.2d 619 (1970).

**Where the record revealed absolutely nothing as to the conditions in a home maintained by the paternal grandparents in New Jersey, or that the paternal grandparents ever desired custody** of their grandchild, there quite clearly was an abuse of discretion by the trial court in awarding them custody. Rippere v. Rippere, 157 Colo. 29,

400 P.2d 920 (1965).

**Where the trial court did not make any finding of fact or even assert the conclusion of law that the mother was unfit to have custody of the minor children** of the parties, and the findings were also deficient in that there were no facts set forth or determination made that it was for the best interests of the children that their custody be given to the father, the court could not have ordered an award of custody to any party, because such findings and conclusions were necessary. Cacic v. Cacic, 164 Colo. 103, 432 P.2d 768 (1967).

**A statement by a trial judge, disclosing that his decision in a custody matter was based largely on irritation and aggravation,** and not on the evidence, indicated such failure to exercise a sound judicial discretion as to require reversal. Crites v. Crites, 137 Colo. 220, 322 P.2d 1045 (1958).

**Court improperly restricted the visitation rights** of the mother where court made no finding that her instability was so severe as to endanger the child physically or impair his emotional development. In re Jarman, 752 P.2d 1068 (Colo. App. 1988).

**Visitation orders are within the sound discretion of the trial court.** This discretion must, however, be exercised consistently with the express public policy of encouraging contact between each parent and the children. In re Lester, 791 P.2d 1244 (Colo. App. 1990).

**The trial court abused its discretion by effectively reducing father's visitation rights** where court limited the father to four days per four-week period where he previously had portions of eight days in any four-week period and there was no evidence that the children would benefit by this reduction in visitation. This restriction was both contrary to the public policy of encouraging frequent visitation and to the evidence in the record. In re Lester, 791 P.2d 1244 (Colo. App. 1990).

**Court not precluded from awarding joint decision-making over mother's objection after finding that father committed domestic violence.** Presumption that mutual decision-making was not in the children's best interest was overcome by evidence of the parents' ability to make decisions concerning the children in a manner that considered mother's safety. In re Morgan, 2018 COA 116M, 428 P.3d 550.

**D. Custody and Visitation.**

**Award of joint custody absent agreement of the parties** is contrary to the best interests of the child. In re Lampton, 677 P.2d 352 (Colo. App. 1983); In re Posinoff, 683 P.2d 377 (Colo. App. 1984) (decided prior to 1987 amendment).

**Joint custody warranted only in the most exceptional cases.** In re Lampton, 704 P.2d 847 (Colo. 1985) (decided prior to 1983 amendment).

**Division of the children between the parents was not generally proper unless the paramount interest of the children required it.** Songster v. Songster, 150 Colo. 466, 374 P.2d 197 (1962).

The trial court does not abuse its discretion in separating the children by awarding custody of the youngest son to the

wife. In re Dickey, 658 P.2d 276 (Colo. App. 1982).

**General visitation order does not meet purposes for which visitation intended** when evidence shows a total lack of cooperation. In re Plummer, 709 P.2d 1388 (Colo. App. 1985).

**Although the stability of the environment** is a valid consideration in awarding custody, instability alone is not sufficient to justify a restriction on visitation. In re Jarman, 752 P.2d 1068 (Colo. App. 1988).

**Where evidence shows a lack of cooperation** between the parties or between the therapists for the mother and the child, the general visitation order does not meet the purposes for which the visitation was intended and is in essence a nullity. In re Sepmeier, 782 P.2d 876 (Colo. App. 1989).

**In determining custody in dependency and neglect hearing, juvenile court committed reversible error** by failing to consider any purposes of § 19-1-101 et seq. and in relying solely on a limited number of purposes set forth in this section. L.A.G. v. People in Interest of A.A.G., 912 P.2d 1385 (Colo. 1996).

**Where neither party submitted a plan for implementing previously ordered joint custody,** court acted properly in ordering the parties to contact a parenting-time coordinator to facilitate and improve the parties' communication in the exercise of joint custody and to establish father's parenting time, given mother's move out of state. In re Garst, 955 P.2d 1056 (Colo. App. 1998) (decided under former § 14-10-123.5 prior to its 1999 repeal).

**Alienation is a significant and foreseeable harm.** When a psychotherapist of a divorced mother, who sought counseling because she believed her ex-husband, the father of the mother's two children, had abused her children, sent a letter to the father and the new therapist for the mother and children opining the mother's conduct was alienating the father from the children, the psychotherapist did breach her duty to the mother. Mitchell v. Ryder, 20 P.3d 1229 (Colo. App. 2000).

**Applied** in In re Murphy, 834 P.2d 1287 (Colo. App. 1992).

## III. TENDER YEARS DOCTRINE.

**In its concern for children, particularly those of tender years, the supreme court formerly enunciated guides** for trial courts in the disposition of controversies regarding their custody. Songster v. Songster, 150 Colo. 466, 374 P.2d 197 (1962).

**Formerly, courts did not deprive the mother of the custody of her children of tender years,** unless it was clearly shown that she was so unfit a person as to endanger the welfare of the minors. Hayes v. Hayes, 134 Colo. 315, 303 P.2d 238 (1956); Evans v. Evans, 136 Colo. 6, 314 P.2d 291 (1957); Green v. Green, 139 Colo. 551, 342 P.2d 659 (1959).

**A mother's love, care, and affection for a child of tender years were considered the most unselfish of all factors in human relations,** and a child was not to be deprived thereof unless for a very good reason, founded on lack of moral fitness and proper home surroundings. Hayes v. Hayes, 134 Colo. 315, 303 P.2d 238 (1956).

**Mere fact of motherhood is not sufficient to give a mother any special standing in the proceeding or preference as to custody.** Rayer v. Rayer, 32 Colo. App. 400, 512 P.2d 637 (1973).

**Court's undue emphasis on motherly instincts reversible error.** Court's undue emphasis on "motherly instincts" constituted a presumption that the mother was better able to serve the best interests of the child because of her sex and was both an abuse of discretion and reversible error. In re Miller, 670 P.2d 819 (Colo. App. 1983).

**Sufficient findings unrelated to parental gender.** Although the court states that one of its considerations in making a custody award is a belief in the importance of a "meaningful relationship" between a father and son, the remark does not rise to the level of a presumption where the court makes sufficient findings unrelated to parental gender to support the award. In re Clarke, 671 P.2d 1334 (Colo. App. 1983).

## IV. JURISDICTION OF COURT.

**The trial court had a continuing jurisdiction and control based upon the welfare of the child.** Coulter v. Coulter, 141 Colo. 237, 347 P.2d 492 (1959).

**Where the court could provide for custody of children by orders made "before or after" the entry of a final decree,** the trial court could provide for the custody of the child even though the subject was not mentioned in the original decree. Kelley v. Kelley, 161 Colo. 486, 423 P.2d 315 (1967).

**When the wife-defendant died before any divorce decree had entered, the divorce action thereupon abated,** and thereafter the court was without jurisdiction to enter any order concerning custody or right of visitation. Wood v. Parkerson, 163 Colo. 271, 430 P.2d 467 (1967).

**Contempt for failure to comply with custody order was not separate procedure,** but continuance of divorce action. Brown v. Brown, 31 Colo. App. 557, 506 P.2d 386 (1972).

**The district court in a divorce action could not acquire exclusive jurisdiction over custody of minor children** residing in a foreign jurisdiction. Scheer v. District Court, 147 Colo. 265, 363 P.2d 1059 (1961).

**A custody award entered by one court is not binding on courts of another state under the full faith and credit clause of the federal constitution** after the child has become domiciled in the latter state, because when a child's domicile is changed he is no longer subject to the control of the court which first awarded his custody. Scheer v. District Court, 147 Colo. 265, 363 P.2d 1059 (1961).

**A child's domicile is that of the parent with whom it lives.** Scheer v. District Court, 147 Colo. 265, 363 P.2d 1059 (1961).

**While appeal is pending, trial court cannot modify orders concerning parental responsibilities or parenting time that are material to the appeal.** Sections 14-10-129(1)(a)(I) and 14-10-131(2) do not specifically grant trial courts continuing jurisdiction to rule on motions to modify orders already on appeal. In re Parental Responsibilities

Concerning W.C., 2020 CO 2, 456 P.3d 1261.

The trial court does not have jurisdiction in this case because father's motions were material to the appeal because they sought to modify the very orders on appeal. The court did not consider whether an emergency exception to grant a trial court jurisdiction would be appropriate if father had alleged imminent physical or emotional harm to the child due to the orders. In re Parental Responsibilities Concerning W.C., 2020 CO 2, 456 P.3d 1261.

## V. MOTIONS AND ORDERS.

**The court could make an order for the care and custody of minor children, and make provision for their maintenance,** and this in the same decree making an award for alimony. Brown v. Brown, 131 Colo. 467, 283 P.2d 951 (1955).

**Motions for determination of custody of children are different in kind from actions to enforce wholly personal rights as property or alimony,** because the question of custody of children deals with a status and the issue on such a motion is the welfare of the children. Kelley v. Kelley, 161 Colo. 486, 423 P.2d 315 (1967).

**An order determining custody of children, like an order determining alimony,** was reviewable in the supreme court. Miller v. Miller, 129 Colo. 462, 271 P.2d 411 (1954).

**Trial court findings necessary for review.** While it is not necessary that a trial court make specific findings on each and every factor included in this section, there must be some indication in the record that the trial court considered such of those factors as were pertinent, and the findings thereon must be sufficient to enable this court to determine on what ground the trial court reached its decision, and whether that decision was supported by competent evidence. In re Jaramillo, 3 7 Colo. App. 171, 543 P.2d 1281 (1975).

**C.R.C.P. 52 is applicable to judgments in custody proceedings.** In re Jaramillo, 3 7 Colo. App. 171, 543 P.2d 1281 (1975).

**In a divorce action involving the custody of minor children, where no reporter was present and no record made of the evidence,** and the written conclusions of the trial judge indicate that the orders entered were arbitrary and unsupported by evidence, the judgment must be reversed. Crites v. Crites, 137 Colo. 220, 322 P.2d 1045 (1958).

**Where custodial orders of the trial court were silent on the question of character and fitness of either parent to have custody** of the children, the trial court should have made findings of fact thereon, because lacking such findings the supreme court was without compass to ascertain whether trial court acted properly. Songster v. Songster, 150 Colo. 466, 374 P.2d 197 (1962).

**Cross References:**

(1) For the "Uniform Child-custody Jurisdiction and Enforcement Act", see article 13 of this title 14.

(2) For the legislative declarations contained in the 2005 act amending subsections (1.5)(b)(IV) and (1.5)(b)(V), see

sections 1 and 3 of chapter 244, Session Laws of Colorado 2005.

| DISTRICT COURT, DOUGLAS COUNTY, COLORADO | |
|---|---|
| Court Address:<br>4000 JUSTICE WAY, CASTLE ROCK, CO, 80109-7546 | DATE FILED: March 31, 2023 8:38 AM<br>CASE NUMBER: 2020DR30618 |
| **Petitioner(s)** LINDSI GULLI<br>and<br>**Respondent(s)** CARMINE GULLI | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2020DR30618<br>Division: SR          Courtroom: |
| **Order:Forthwith Motion for Judge Lowenbach to Reconsider Ruling From** | |

The motion/proposed order attached hereto: DENIED.

The attachment to the Motion does not say what the Respondent represents that it says. The attachment is a recommendation by Magistrate Hegerty of the US District Court to dismiss the federal case. It appears to have no relevance to the Respondent's Motion.

Issue Date: 3/31/2023

JOHN ROBERT LOWENBACH
Senior Judge

Page1 of1

**Court:** ☒ District ☐ Juvenile

Colorado County: _Douglas_

Mailing Address: _4000 Justice Way Castle Rock, CO 80109_

**Parties to the Case:**

Petitioner: _Lindsi Johnson (Gull)_

&

Respondent: _Carmine Gull_
*(or Co-petitioner)*

FILED
IN THE COMBINED COURTS
DOUGLAS COUNTY, CO

MAR 04 2023

*This box is for court use only.*

2020DR30618

**Filed by:**

Name: _Carmine Gull_

Mailing Address: _2002 Quartz St Castle Rock, CO_

Phone _630-347-1479_     Fax: _____

Email: _Carmine.gull.@gmail.com_  Bar Number: _____
*(For lawyers)*

Case Number: _2020DR30618_

Division: _____

Courtroom: _____

☒ **Motion to (for)** _Judge Lowenbach to reconsider ruling from_

1.     **Other Parties' Response**

I checked to see if the other parties agree with my request. They:

☐ Agree.     ☐ Disagree.     ☒ Did Not Respond.

☐ Other: _____

2.     **My Information**

I am the:     ☐ Petitioner.     ☒ Respondent *(or co-petitioner)*.

3.     **My Request**

I want the Court to: _Reconsider rulings from 02/14/23. Assign petition court fees from all federal cases spend, subpoenas, cct._

4.     **Discussion**

The Court should grant my request, because: _Based on Rule 59:61 on 01/18/23 the District court ordered a district judge be assigned this case. CASE # 1-23 CV-00098-MEH. Judge Lowenbach is mentioned specifically in these proceedings. If denied I will appeal said orders in the appellate court. If I have to appeal I will have my attorny bill petitioner directly._

**5.    Certificate of Service**

I certify that on *(enter date)* ___53/ 24/2 3___, I gave a copy of this document to the

other parties by: *(select at least one)*

☐    Colorado Courts E-Filing.    *www.jbits.courts.state.co.us/efiling*

☑    Email or Fax to: ___Clarks ecls__ attorny.com___

☐    Regular Mail, addressed to: *(name, full address)*    ☐    Hand Delivery, to: *(name, place)*

1) _____.

2) _____.

3) _____.

**6.    Sign & Date**

Print Your Name: ___Carmine Gulpi___

___[signature]___    ___03/24/23___

Signature    Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DATE FILED: March 31, 2023
CASE NUMBER: 2020DR30618

MAR 31 2023

Civil Action No. 23-cv-00098-MEH

CARMINE GULLI,

     Plaintiff,

v.

LINDSI JOHNSON,
ROSS JOHNSON,
DANIELLE DEMKOWICZ, and
LON KOPIT,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Before the Court is Plaintiff's Complaint (ECF 1) which it reviews *sua sponte*. Because this Court sees no basis by which it has federal subject matter jurisdiction over Plaintiff's claims for relief, this Court recommends that the Complaint be dismissed without prejudice and without leave to amend.

### BACKGROUND

     This lawsuit concerns a Colorado state court divorce case which Defendant Lindsi (Gulli) Johnson brought against Plaintiff in 2020. Plaintiff (the respondent to that divorce proceeding) commences the instant civil action in federal court against his former wife and others from that divorce case. Plaintiff complains that the Defendants have not complied with their respective obligations in the divorce proceeding. It is unclear whether that divorce case remains open, but Plaintiff's reference to Judge Lowenbach as the judge who is currently assigned to that case (*id.* at 8) suggests that the parties still are litigating it.

*Respondent*

*2020DR30618*

*Pretrial Statement*

*Exhibit "A"*

The focus of Plaintiff's second claim for relief is on Lindsi Johnson's father, Ross Johnson, and the allegation that he has hidden income or other financial assets from the divorce court. He also complains that Lindsi Johnson's attorney, Ms. Demkowicz, filed a trust document with the divorce court under seal. The divorce court docket sheet and the divorce court's order dated March 30, 2022 suggest that Lindsi Johnson's true financial state has been an ongoing dispute. In response to Plaintiff's "claims of [Lindsi Johnson] hiding money," the divorce court ordered her "to disclose any bank or other financial statements containing funds held for [her], even if the bank account is not specifically in [her] name." ECF 1-1.

Plaintiff's first claim of relief concerns his effort to investigate the above matter. There, Plaintiff complains about the failure of Lindsi Johnson or her attorney to provide him addresses where he can subpoena Ross Johnson and a third party (whom he believes is helping to hide money) for bank records.

On January 13, 2021, the divorce court judge appointed Lon Kopit pursuant to Colo. Rev. Stat. § 14-10-116.5 as a Child and Family Investigator ("CFI"). Plaintiff's third claim for relief is directed against CFI Kopit whom he alleges hid negative information about Lindsi Johnson from the divorce court and hindered a police investigation.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Dismissal under it is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss

2

under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). Plaintiff bears the burden of establishing that this Court has jurisdiction to hear his claims. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms:

> First, a facial attack on the complaint's allegations as to subject-matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4.

## ANALYSIS

### I.    No Basis for Federal Subject Matter Jurisdiction

"The district courts of the United States, as we have said many times, are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citation omitted). Pursuant to Section 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Thus, "diversity jurisdiction exists only if no plaintiff and no defendant are citizens of the same state—that is, there must be 'complete diversity between all plaintiffs and all defendants.'" *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th

3

Cir. 2014) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). "[A] party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence." *Id.*

The facts presently alleged are insufficient to establish the parties' complete diversity of state citizenship. Plaintiff describes himself as a citizen of Colorado, and he alleges that two of the named Defendants are Colorado citizens as well. Whether all of the named Defendants are subject of the Colorado state divorce court's personal jurisdiction, this Court need not answer. The only inquiry relevant here is whether 28 U.S.C. § 1332(a)(1) is met.

Alternatively, a federal court has jurisdiction over a lawsuit that raises a question of federal law. 28 U.S.C. § 1331. The only federal law that Plaintiff cites is 42 U.S.C. § 13031 which is the former version of the statute now codified at 34 U.S.C. § 20341. *See* ECF 1 at 3. That statute does not apply to this case for two reasons. First, it concerns a professional's failure to report child abuse while engaged in activity on *federal* property. Second, it is a criminal statute. A criminal statute does not provide a cognizable basis for judicial relief; and this defect alone compels dismissal. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Schmeling v. NORDAM*, 97 F.3d 1336, 1344 (10th Cir.1996). This defect also means that Plaintiff raises no question of federal law by which to invoke this Court's subject matter jurisdiction.

II.    **Abstention**

Regardless of whether this Court does have subject matter jurisdiction over this civil action, it still should abstain from exercising it. This Court assumes that divorce (as with child welfare) is a family law matters that implicate important state court interests from which federal courts generally should abstain. *Cf. Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996) (emphasizing that "[i]t cannot be gainsaid that adoption and child custody proceedings are an especially delicate subject of state policy [and] that family relations are a traditional area of state

4

concern"). Plaintiff does not demonstrate how the state divorce court is an inadequate forum for raising all of the concerns that he asserts in the instant lawsuit. *Chapman v. Oklahoma*, 472 F.3d 747 (10th Cir. 2006) (abstaining from exercising federal subject matter jurisdiction over plaintiff's constitutional violation claims regarding a family court's rulings); *C.N. by Nedd v. Meinster*, No. 18-cv-00620-MSK, 2019 WL 200750, at *2–3 (D. Colo. Jan. 15, 2019) (declining to interfere with the state juvenile court proceeding). A federal court should assume that state procedures afford an adequate remedy, and it is Plaintiff's burden to establish the contrary. *Winters v. Kansas Dep't of Soc. & Rehabilitation Servs.*, No. 10-2181-JAR-DJW, 2011 WL 166708, at *8 (D. Kan. Jan. 19, 2011). Very important interests are at stake for all involved, and for that reason, Plaintiff should raise all relevant legal issues, claims, or defenses in the divorce case to permit the state court to consider them.

Underlying Plaintiff's instant federal lawsuit are matters not only inherently part of a state divorce court proceeding but matters that the presiding state court judge has already considered. This includes Plaintiff's grievance against CFI Kopit. It was the presiding judge who on January 13, 2021 appointed[1] him to serve in the divorce proceeding. ECF 1-2. More recently, in March 2022, the state court declined Plaintiff's request for a third CFI investigation, informing his divorce attorney that he instead "may address any deficiencies in the CFI's report in his examination of the CFI at [a] permanent orders hearing." ECF 1-1. Plaintiff does not explain how he may use this federal court as an extension of the state court to obtain supplemental forms of judicial intervention for any of the above disputes.

---

[1] This Court does not consider at this juncture whether a CFI by virtue of court appointment enjoys quasi-judicial immunity like a guardian ad litem does. *Oosterhous v. Short*, 730 F. Supp. 1037, 1039 (D. Colo. 1990); *Wise v. Arapahoe County Dep't of Human Servs.*, No. 20-cv-01952-MEH, 2021 WL 981318, at *8 (D. Colo. 2021).

The *Rooker-Feldman* abstention doctrine is at issue here. That doctrine, drawn from *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), prevents a federal district court from hearing claims that either were at issue before the state court or that are inextricably intertwined with the state court's ruling. The doctrine applies if a favorable ruling in the federal lawsuit requires finding the state court's ruling to be wrong or would render it ineffectual. *Crone*, 2012 WL 5832438 at *2-3. In other words, Plaintiff may not appeal the state court's ruling to this federal district court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233–34 (10th Cir. 2006); *Davis v. Schnurr*, 818 F. App'x 852 (10th Cir. 2020).

If the state divorce court proceeding remains open and pending, then the abstention doctrine from *Younger v. Harris*, 401 U.S. 37 (1971) applies. *Younger* abstention precludes a federal court from intruding into an ongoing state criminal prosecution, certain civil enforcement proceedings, or civil proceedings that involve certain orders uniquely in furtherance of the state court's ability to perform its judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013); *see also Kaplan*, 2012 WL 3277170 at *5. "*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002). Generally speaking, it is the state court that normally handles state family law matters.

Abstention warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(1) without prejudice for lack of federal subject matter jurisdiction. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 668 n. 7 (10th Cir. 2020); *Kaplan*, 2012 WL 3277170 at *6.

III.    No Leave to Amend

Dismissal of a case is a harsh remedy, and a *pro se* litigant's pleadings are to be construed liberally. Generally, a court may give such a litigant the opportunity to amend the complaint to

6

cure a pleading defect. *Hall*, 935 F.2d at 1109-10; *Reynolds v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, a court may dismiss a complaint without an opportunity to amend if "it is patently obvious that plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). This Court does not see how Plaintiff can overcome the jurisdictional and abstention barriers identified above, should he be given leave to amend.

## CONCLUSION

Plaintiff asks this federal court to compel various parties to his state divorce court proceeding to comply with their obligations from that divorce court proceeding. However, for the reasons this Court explains above, this federal court lacks the jurisdiction to provide him the kind of relief that he seeks.

Accordingly, the Court recommends[2] that Plaintiff's Complaint be dismissed without prejudice and without leave to amend. This Court recommends further that this case be closed.

The Court directs the Clerk of the Court to **reassign** this case to a District Judge pursuant to D.C. Colo. LCivR 40.1(a).

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.

7

Respectfully submitted this 18th day of January, 2023, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge